IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TAMMY REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:23-cv-04066-MDH |
| ) | |
| ANGIODYNAMICS, INC. & NAVILYST, ) | |
| MEDICAL, INC., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants' Motion to Dismiss. (Doc. 37). Defendants move to dismiss Plaintiff's First Amended Complaint arguing Plaintiff's claims are barred by the applicable statutes of limitations, that Plaintiff fails to state a claim, and that Plaintiff's fraud claim is inadequately pled. The motion has been fully briefed and is ripe for review.

## BACKGROUND

Plaintiff's First Amended Complaint states "[t]his is an action for damages arising out of the failure relating to Defendants' design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling the defective implantable vascular access device sold under the tradename of SmartPort CT-Injectable Port ("SmartPort" or "Port-a-cath")." Specifically, Plaintiff alleges to have been injured by a SmartPort product that caused her to develop bacteremia, infection, and sepsis.

The SmartPort is a totally implantable vascular access device designed to provide repeated access to the vascular system for the delivery of medications, intravenous fluids, parenteral nutrition solutions, and blood products. According to Plaintiff's Complaint, the intended use of

1

the SmartPort is to make it easier to deliver medications directly into the patient's bloodstream. The device is surgically placed completely under the skin and left implanted.

On or about October 28, 2010, Plaintiff underwent the placement of a SmartPort device for the purpose of her ongoing chemotherapy. In December 2012, Plaintiff developed "Port-a-cath bacteremia and infection" which caused her to be hospitalized. Plaintiff alleges the Port-a-cath-related infection and bacteremia mandated a removal surgery. On or about January 1, 2012, surgery was performed to remove Plaintiff's Port-a-cath. Plaintiff alleges the pre-op diagnosis was Port-a-cath infection and bacteremia.[1] Plaintiff developed sepsis due to the catheter-related blood stream infection and blood tests during her hospitalization revealed the presence of Enterococcus and Actinomyces. On January 7, 2013, Dr. William L. Salzer, MD noted that Plaintiff also had Candidemia and he connected Candidemia with the Port-a-cath.

Plaintiff's Complaint alleges generally that Defendants misrepresented the safety of the SmartPort system, sold the system as safe and effective, and knew or had reason to know it was not safe. Plaintiff alleges Defendants received large numbers of adverse event reports regarding the SmartPort and were aware that the SmartPort had a higher failure rate than other similar products. Finally, Plaintiff alleges Defendants "intentionally concealed the severity of complications caused by SmartPort."

In addition, Plaintiff alleges Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects. Plaintiff states "[i]n reliance on Defendants' representations, Plaintiff's doctor was induced to, and

---

[1] As stated by Defendants, Plaintiff's FAC alleges that the surgical procedure took place on or about January 1, 2012. Defendant notes this appears to be a typographical error, which the Court agrees. Plaintiff does not address the date in her response. However, regardless of whether the removal surgery took place in 2012 or 2013, the analysis would be the same.

did use, the SmartPort." Plaintiff contends at the time of the implant surgery she was not informed and had no knowledge of the complaints, known complications, or risks associated with SmartPort. Plaintiff further contends at the time of her implant Plaintiff's physicians were unaware of the defective and dangerous condition of SmartPort.

Plaintiff first filed her lawsuit on March 27, 2023. Plaintiff's First Amended Complaint brings the following claims: Count I – Negligence; Count II – Strict Products Liability – Failure to Warn; Count III – Strict Products Liability – Manufacturing Defect; Count IV – Strict Products Liability – Design Defect; Count V – Breach of Implied Warranty; Count VI – Breach of Express Warranty; Count VII – Fraudulent Concealment; and Count VIII – Violation of the Missouri Merchandising Practices Act.

Defendants move to dismiss arguing that under Missouri's four-year statute of limitations for warranty claims Plaintiff's claims are time barred. Defendants also move to dismiss under Missouri's five-year statute of limitations applicable to product liability, personal injury, and fraud actions arguing Plaintiff was required to file any lawsuit in connection with her alleged injuries by January 7, 2018. Plaintiff filed her lawsuit in 2023.

In addition, Defendants contend Plaintiff's allegations consist of boilerplate, conclusory statements and legal conclusions and provide no nexus between the alleged claims and Plaintiff's alleged injuries and should be dismissed for failure to state a claim. Finally, Defendants argue Plaintiff has failed to plead her fraud claim with particularity under the federal rules.

**STANDARD**

"To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content...allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010)

3

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678. To that end, the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp*., 280 F.3d 868, 870 (8th Cir. 2002).

When the allegations raised in the complaint affirmatively show that the statute of limitations has run, the case may be dismissed under Rule 12(b)(6). See *Smith v. Pike Cty. R III School*, 2007 WL 2669121 *2 (E.D. Mo. Sep. 6, 2007) (citing *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004)), and *Wycoff v. Menke*, 773 F. 2d 983, 984-5 (8th Cir. 1985). In diversity actions where the underlying cause of action is based on state law, the state law dictates the appropriate statute of limitations as well as when it begins to run. See *Walker v. Armco Steel Corp*., 446 U.S. 740, 751–53 (1980).

**DISCUSSION**

**Negligence, Strict Products Liability-Failure to Warn, Strict Products Liability-Manufacturing Defect, and Strict Products Liability-Design Defect Claims**

Plaintiff's first four counts are claims for negligence and strict products liability. Missouri's statute of limitations for product liability and personal injury claims is five years. Mo. Rev. Stat. § 516.120(4) (2002). A cause of action for product liability and personal injury accrues, and the statute of limitations begins to run, "when the damage resulting therefrom is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. Whether damage was sustained and capable of ascertainment at a given time is an objective standard and is a question of law. See *State ex rel.*

*Gasconade Cty. v. Jost*, 291 S.W.3d 800, 804 (Mo. Ct. App. 2009); and *H.R.B. v. Rigali*, 18 S.W.3d 440, 443 (Mo. Ct. App. 2000).

Here, the parties dispute does not lie in the applicable statute of limitations. Rather, Plaintiff contends Defendants' intentional, malicious, reckless, and fraudulent conduct during all times relevant to this action prevented Plaintiff from timely ascertaining the real cause of her injuries. Plaintiff argues Defendants fraudulently concealed, suppressed, or omitted material facts concerning the SmartPort at issue and in turn prevented Plaintiff from ascertaining that her infections and related damages were causally linked to Defendants' defective product. Plaintiff argues her injuries were not immediately traceable to the use of the SmartPort, to the identities of the named Defendants, or to their tortious conduct. However, Plaintiff does not allege anything specific about any alleged "concealment" that prevented her from discovering the causal link. In fact, Plaintiff alleges she knew the SmartPort caused the infection and that her doctor removed the SmartPort as a result of the infection.

Defendants cite to Dr. William Salzer's January 7, 2013 medical note. Dr. Salzer's note, related to Plaintiff's removal surgery, connects Plaintiff's Candidemia with the SmartPort. Plaintiff argues Defendants' interpretation of the medical note is misleading. However, in addition to the note, Plaintiff herself alleges that the SmartPort caused the infections and had to be surgically removed as a result.

Plaintiff also argues even if she knew she was injured at the time of the removal surgery, and knew she had developed a SmartPort-related infection, that no amount of due diligence on her part would have immediately revealed the identity of the tortfeasors. Plaintiff contends as a result her damages were not ascertainable at that time. Plaintiff argues she was somehow prevented from discovering any alleged tortfeasor. Plaintiff's argument is based, in part, on the fact that she, as a

5

member of public, was not capable of ascertaining that her injuries were sustained as a result of her use of Defendants' SmartPort. Plaintiff also makes general allegations that Defendants somehow concealed information preventing her from discovering her claims.

The Court finds these arguments unpersuasive. In Missouri, the Court looks at when the "damage sustained is capable of ascertainment," in other words, when evidence of damages was such to place a reasonably prudent person on notice of a potentially actionable injury. The standard for review is an objective one. "A plaintiff's ignorance of his cause of action will not prevent the statute from running." *State ex rel. Gasconade Cnty. v. Jost*, 291 S.W.3d at 804 ("Section 516.100's phrase 'capable of ascertainment' refers to the fact of damage but does not mandate the plaintiff know the precise amount of that damage.").

Here, Plaintiff's cause of action began to accrue, at the latest, on January 7, 2013, when she underwent surgery to remove the port. The doctor's records, and Plaintiff's own allegations, state that Plaintiff was on notice that the SmartPort was infected, had to be surgically removed, and had caused her alleged damage. As a result, her claims based on the damages caused by the infected SmartPort are time barred as of January 7, 2018, under Missouri's five year statute of limitations.

Further, as argued by Defendants, at a minimum, Plaintiff's physician would have been aware of the brand name and manufacturer of the product he selected for surgical placement. Further, even if Plaintiff herself did not know the manufacturer, she specifically alleges that she knew she was injured and connected that injury to the SmartPort in January 2013 at the time of her removal surgery. Therefore, Plaintiff's damages were capable of ascertainment, even if she did not know their full extent or the specific details. At the time the SmartPort was removed, Plaintiff

knew she was injured by the medical device, even if she did not know the identity of the manufacturer, and that is sufficient to trigger the running of the statute of limitations.

Plaintiff's claimed injuries resulted from an infection and sepsis which she alleges were a result of the implanted SmartPort. Further, Plaintiff's physician specifically connected her injury and infection to the SmartPort at the time the device was removed on January 7, 2013. Wherefore, the Court finds, reviewing the record in a light most favorable to Plaintiff, any reasonable person in Plaintiff's position would have been on notice as of January 7, 2013, that she might have a cause of action in connection with the infection allegedly associated with the SmartPort device. As a result, the Court finds Plaintiff's claims are time-barred and should be dismissed.

**Warranty Claims**

An action for breach of warranty must be commenced within four years of the accrual of the cause of action. Mo. Rev. Stat. § 400.2 -725; *Clevenger & Wright Co. v. A.O. Smith Harvestore Prods*., Inc., 625 S.W.2d 906, 908 (Mo.Ct.App.1981). The four year period begins to run upon delivery of the goods unless the goods were sold with a warranty for future performance; in such case, the statute of limitations runs from the date on which the defect was or should have been discovered. *Id*.

Plaintiff alleges that the medical device at issue was implanted on October 28, 2010. First, Defendants argue the statute of limitations for Plaintiff's warranty claims began to run at that time and as a result expired on October 28, 2014. In the alternative, Defendants contend that for the reasons discussed above, the alleged defect could have been discovered at the latest on January 7, 2013 and therefore any such claim should have been brought by January 7, 2017. Again, Plaintiff filed her complaint in March 2023. For the reasons stated herein, the Court finds Plaintiff's

damages were ascertainable at the time the SmartPort was removed on January 7, 2013. As a result, the warranty claims are also time-barred.

### MMPA Claim

The statute of limitations for a claim under the MMPA is five-years. Mo. Rev. Stat. § 516.120; see also *Owen v. General Motors Corp*., 533 F.3d 913, 921 n. 6 (8th Cir. 2008) (MMPA claim is subject to a five-year statute of limitations). In addition, "the statute of limitations begins to run when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." *Huffman v. Credit Union of Texas*, 758 F.3d 963, 967 (8th Cir. 2014). A claim accrues when Plaintiff is on " 'inquiry notice' of the wrong and damages. *Id.* at 968.

As discussed herein, Plaintiff's alleged damages were capable of ascertainment by January 7, 2013 when she underwent the removal surgery. As a result, the five year statute of limitations began to run at that time. For the reasons stated herein, Plaintiff's MMPA claim is also time-barred.

### Fraudulent Concealment Claim

Rule 9(b) establishes a heightened pleading standard for complaints alleging fraud. *Zaccarello v. Medtronic, Inc*., 38 F. Supp. 3d 1061, 1065 (W.D. Mo. 2014). To survive a Rule 9(b) challenge, the complaint must plead "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Id.* (internal citations omitted).

In addition, a cause of action for fraud is subject to a five-year statute of limitation. See Mo. Rev. Stat. § 516.120; *Boland v. Saint Luke's Health Sys*., 588 S.W.3d 879, 882 (Mo. banc 2019). Specifically, subsection (5) states that a claim for fraud must be brought within five years

8

from when the cause of action accrued, which is either when the facts constituting the fraud are discovered, or with reasonable diligence could have been discovered, but no longer than ten years after the fraud occurred. *Id.*, see also *Dean v. Noble*, 477 S.W.3d 197, 204 (Mo. App. W.D. 2015) (internal citations omitted) ("A cause of action for fraud accrues at the time the defrauded party discovered or in the exercise of due diligence should have discovered the fraud."). "Plaintiff has a duty to make inquiry to discover facts surrounding the fraud and is deemed to have knowledge of the fraud when he possesses the means of discovery." *Id.* at 204.

First, Defendants argue Plaintiff's fraudulent concealment claim is conclusory and fails to plead any specific instances of actual concealment or fraud. Defendants argue Plaintiff's failure to disclose an alleged fraud also fails to plead any acts taken by Defendants that are necessary to state a claim for fraudulent concealment. The Eighth Circuit has stated: "fraudulent concealment 'must be something more than mere silence on defendant's part ...; usually the employment of some means or device to prevent discovery should be shown.'" *Owen v. Gen. Motors Corp.*, 533 F.3d at 919–20. "The crux of a fraudulent concealment claim is showing that the defendant 'affirmatively intend[ed] to conceal from plaintiff the fact that the plaintiff ha[d] a claim against the defendant.'" *Id.*

Taking Plaintiff's allegations as true, at a minimum Plaintiff's physicians knew the cause of the injury at the time that Plaintiff developed infections and at the latest by January 2013 when the SmartPort was surgically removed. Plaintiff was informed of the reason for the removal. Here, Plaintiff has not specifically pled any actions taken by Defendants to fraudulently conceal the identity or nature of the product, or any other fraudulent actions related to her claims, that would defeat the statute of limitations applicable to her Complaint.

9

Plaintiff argues, "discovery will shed some additional light on the circumstances of fraud." However, this is not enough to survive a motion to dismiss. General allegations that Defendants "knew the product was unsafe" or "defective" is not sufficient to plead fraudulent concealment. The Federal Rules of Civil Procedure require that fraud be plead with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Plaintiff must allege and "identify the 'who, what, where, when, and how' of the alleged fraud."

Here, Plaintiff's allegations contain general allegations regarding Defendants' marketing and advertising strategy. Plaintiff alleges general statements made by Defendants regarding the safety of the product but fails to identify any specific statements made to Plaintiff or her doctors, or any statements that Plaintiff or her doctors relied upon. There are no direct allegations of any specific statements made by Defendants. A claim of fraudulent concealment requires a party to affirmatively allege facts supporting the concealment. *Batek v. Univ. of Mo.*, 920 S.W.2d 895, 900 (Mo. banc 1996).

As a result, the Court finds Plaintiff has not alleged any specific or particular actions taken by the Defendants with regard to allegedly concealed information, what specific information was allegedly concealed, when the concealment allegedly took place, or how the unspecified information was concealed. Rather, Plaintiff makes generalized allegations of "fraudulent concealment" or "fraudulent, deceptive, and unfair acts" without any specificity. Plaintiff's broad characterizations of Defendants' statements regarding the safety of the product are insufficient to plead a claim for fraudulent concealment. Further, for the reasons set forth herein the Court finds the claims are untimely as the statute of limitations accrued at the latest when the device was

surgically removed on January 7, 2013. As a result, the Court finds Plaintiff's claim for fraudulent concealment should also be dismissed.

## CONCLUSION

Wherefore, for the reasons stated herein, the Court **GRANTS** Defendants' Motion. Plaintiff's claims are hereby dismissed.

**IT IS SO ORDERED.**

DATED: December 7, 2023

                                      */s/ Douglas Harpool*
                                      **DOUGLAS HARPOOL**
                                      **UNITED STATES DISTRICT JUDGE**